## ROWELL *vs.* THE INHABITANTS OF MONTVILLE.

No adverse appropriation or use of land as a road, for a period short of twenty years, is sufficient to raise the presumption of a grant; nor to impose on a town the obligation to pay any damages occasioned by its neglect to keep the road in repair.

THIS was an action brought to recover double damages for the breaking of the plaintiff's leg, occasioned by the badness of a "usually and publicly travelled town way," within the town of *Montville.* The writ was dated *July* 12, 1823.

The plaintiff, to prove the existence of the road, read in evidence a vote of the town of *Montville* passed *May* 2, 1809, accepting a road therein described, by courses and distances, as "laid and surveyed by *Joseph Chandler*, selectman." But in the warrant for calling that meeting, there was no article respecting the acceptance of any roads. The road actually opened, which was done soon after the passing of this vote, agreed with the record, in its *termini*, but not in the courses; the place where the plaintiff was hurt being seventeen rods distant, from the road laid out by the selectman, and described in the vote of the town. It was also proved that one of the surveyors of highways in *Montville* had once expended about a shilling in removing obstructions from the road;—that a guide-board was placed at one end of it, as at other junctions of roads in the town;—that it was a road

Rowell v. Montville.

much used by the citizens of the town;—and that the owner of the land over which it passed, had always acquiesced in this appropriation of it to the public use.; and on one ocsasion had taken a bond to indemnify, not only himself, but the town, against any damages occasioned by flowing water across the road. It further appeared that at a meeting of the inhabitants, called " to see if the town will accept *Jonathan Rowell's* proposals in regard to his leg being broke, &c," it was voted to allow him eighty dollars, " for damage he sustained by breaking his leg on account of a bad place in a road in said town." At a subsequent meeting, which was called in the following year, to see what method the town would take " to settle the controversy" with the plaintiff, a similar vote was passed ; but it was afterwards reconsidered, at an adjournment of the same meeting.

It was hereupon objected, on the part of the defendants, that the evidence did not shew the existence of any public road ; the way having been laid out by only one of the selectmen, and no notice of the subject having been given to the inhabitants, by any article in the warrant previous to its acceptance ;—that if the proceedings had been legal, yet the actual location did not conform to the record, and therefore was void ;—that here was no ground for presumption that a road had once been legally laid out, the opening of it being of so recent a date ;—and that the votes of the town where not to be taken as recognitions of a legal road, but merely as offers of compromise of an existing dispute. The Chief Justice, before whom the cause was tried, overruled these objections for the purpose of ascertaining the damages; reserving the questions of law for the consideration of the court. And a verdict was accordingly returned for the plantiff.

*Allen* and *Greenleaf*, for the defendants, now argued in support of the objections made at the trial ; and cited *Commonwealth v. Newbury* 2 *Pick.* 51. *Commonwealth v. Charlestown* 1 *Pick.* 188. *Commonwealth v. Merrick* 2 *Mass.* 529.

*Orr* and *Ruggles*, for the plaintiff, said that good faith and good policy required that public roads should not be made snares for

the unwary. The town had opened the road, repaired it, and announced it to all the citizens as a safe and convenient public way, by erecting a guide-board at the end of it; its existence had been sanctioned by a previous vote of acceptance; and again it had been subsequently recognized, in repeated votes, as a public highway; and to suffer the inhabitants now to deny the regularity and legal character of their own proceedings, and take advantage of any defects in the location of the road, would be a violation of the rule that no man shall take advantage of his own wrong. If the original location were not good, it had become valid by the transactions, *ex post facto*, on the part of the town, and by the acquiescence of the owner of the land. *Stat* 13, *Ce* . 3, *ch.* 78. *Todd v. Rome* 2 *Greenl.* 55. 4 *Mass.* 565. 5 *Mass.* 435. 12 *Johns.* 222. 10 *East* 375, *note. Proprietors of the Canal Bridge v. Gordin* 1 *Pick.* 297. *Garland v. Salem East* 9 *Mass.* 410. And the time which has elapsed since the opening of the road is sufficient, under the circumstances of the case, to afford ground for legal presumption that the proceedings were regular. *Balston v. Bensted* 1 *Camp.* 463. *Berry & al. v. Carle* 3 *Greenl.* 269. Lapse of time, in any case, is necessary on no other principle than as evidence of the assent of parties whose interests are adverse to the right claimed. But the present case shews not only the intent of the town to claim the easement, but the express admission of the owner of the land that the claim was lawful. The town, thus having acquired the use of the way, was bound to keep it in repair. 2 *Doug.* 749.

Mellen C. J. delivered the opinion of the court.

The road in question cannot be considered as a legal town way. It was laid out by only one of the selectmen, and was never duly accepted by the town, because there was no article in the warrant for calling the meeting that could justify its acceptance. It cannot be considered as a way by prescription, for it has not yet been in existence for fourteen years; and no presumption is admissible as to its origin, because we know it originated at the time it was laid out, and in virtue of the supposed legality of the

town's proceedings respecting it. But it is contended that during the above period, it has been a road or way *de facto*; and that as the town has bestowed some repairs upon it, and placed a guide-post at one end of it, they are estopped to deny its existence and their liability to repair it. Unless they had a right to repair it, we cannot consider them bound so to do. *Todd v. Rome* 2 *Greenl.* 55. No adverse appropriation and user of the land, over which the road passes, short of twenty years, could take away the owner's right of entry and give the town a right to dig up the soil or remove it, and do those things necessary in making or repairing the road. In *Gayetty v. Bethune* 14 *Mass.* 49, the plaintiff complained of the interruption of a private way. The court say " it " is adverse possession only upon which a presumption of a grant " can arise;" and that " no period short of twenty years has been " allowed, sufficient for this purpose, in this country." And a similar principle seems to have been adopted by the court in the case of *First Parish in New Gloucester v. Beach,* of which a report appears in a note to *Commonwealth v. Newbury* 2 *Pick.* 51. The same principle was recognized in *Hill v. Crosby ib.* 466. It is true these are cases in which the right of way was claimed by an individual : but there seems to be no ground of distinction between such a claim asserted by an individual or by the public : in neither case can the right be acquired, except by a continued adverse claim and user for at least twenty years. Besides, during the whole period of the road's existence, only one shilling was ever laid out upon it, and that merely in removing some particular obstruction; and whether this was done under the town's authority is uncertain, because it does not appear that the road in question was ever assigned to any surveyor. We do not perceive any one act, performed under the legal authority of the town respecting this road, which can be considered as binding on them. The votes passed and reconsidered as to compensation, were only propositions for a compromise, but were never accepted. Our opinion is, that upon the facts before us, the action cannot be maintained. And therefore the verdict must be set aside, and a

*New trial granted.*